Stephen B. Watkins, Bar Number 3400
Armand J. Howell, Bar Number 10029
Benjamin J. Mann, Bar Number 12588
Paul M. Halliday, Jr., Bar Number 5076
HALLIDAY, WATKINS & MANN, P.C.
Attorneys for PennyMac Loan Services LLC
as servicer for Bank of America, N.A.
376 East 400 South, Suite 300
Salt Lake City, UT 84111
Telephone:  801-355-2886
Fax:  801-328-9714
Email: armand@hwmlawfirm.com
File No:  48985

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH
## CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>DAVID LEWIS KAGIE AND ANNETTE KAGIE<br><br>        Debtors. | Bankruptcy Case No. 15-27552 JTM<br>Chapter 13<br><br>**MOTION TO TERMINATE AUTOMATIC STAY AS TO PENNYMAC LOAN SERVICES LLC AS SERVICER FOR BANK OF AMERICA, N.A.**<br><br>[Filed Electronically] |

PennyMac Loan Services LLC as servicer for Bank of America, N.A., hereinafter referred to as ("Secured Creditor"), hereby moves the Court pursuant to 11 U.S.C., Section 362(d), Bankruptcy Rules 4001 and 9014 and Local Rules 4001-1 and 9013-1, for an order terminating the automatic stay with respect to the following described real property (the "property") located in Salt Lake County, State of Utah:

> Lot 223, Silverwood Subdivision Phase 2, according to the official plat thereof as recorded in the Office of the Salt Lake County Recorder;
> Commonly known as 3398 South 6180 West, West Valley City, UT 84128;

so that it may proceed to pursue its rights and remedies under applicable law.  This motion is based on the following.

1.    That on or about January 26, 2009, Debtor, David L Kagie, executed the Note and Trust Deed, which Note and Trust Deed are in default.  Secured Creditor is the current beneficiary of the Trust Deed.  Copies of the Note, Trust Deed, Loan Modification, and Assignment of Trust Deed are attached hereto.

2.    That Debtors have not made their post-petition monthly payments as required by their plan and as of July 13, 2017, are in arrears seven (7) post-petition payments being from January 1, 2017 to July 1, 2017.

3.    That Debtors have failed to provide Secured Creditor with adequate protection of its interest in the property.

4.    That Debtors have no realizable equity in the property.

5.    That the above allegations constitute sufficient cause pursuant to 11 U.S.C., Section 362(d) entitling Secured Creditor to an order terminating the automatic stay so that Secured Creditor may proceed to pursue its rights and remedies under applicable law.

6.    That Secured Creditor is entitled to its reasonable attorney's fees, costs and expenses for bringing this motion in accordance with its note and trust deed.

7.    With respect to Rule 4001(a)(3), the Court should allow immediate enforcement of any order for relief granted herein.

8.    Secured Creditor services the loan on the Property referenced in this Motion.  In the event the automatic stay in this case is modified, this case dismissed, and/or the Debtors obtain a discharge and a foreclosure action is commenced on the mortgage property, the foreclosure will be conducted in the name of the Secured Creditor.  Secured Creditor directly or

through an agent, has possession of the Note.  The Note is either made payable to Secured Creditor or has been duly endorsed.

WHEREFORE, Secured Creditor moves the Court for the following relief:

1.      That the evidentiary hearing to be held within thirty (30) days of the date of this motion, in accordance with 11 U.S.C., Section 362, be the final evidentiary hearing on this matter;

2.      That the automatic stay pursuant to 11 U.S.C., Section 362, be modified and terminated to permit Secured Creditor to immediately exercise its rights and remedies under applicable state and federal law.  In the alternative, the Debtors should be ordered to provide Secured Creditor with adequate protection of its interest in the property;

3.      For attorney's fees, costs and expenses and such further or other relief as the Court deems appropriate;

4.      Any order based on stipulation governing the continuation and termination of the automatic stay or any order granting relief from the automatic stay should not be amended or altered or superseded by the confirmation order entered in this case but should be considered a part of and integrated into the confirmation order.  Further, if the automatic stay is terminated prior to confirmation, the automatic stay should not be reimposed by the entry of the confirmation order;

5.      Secured Creditor seeks relief in order to, at its option, offer, provide and enter into any potential forbearance agreement, loan modification, refinance agreement or other loan workout/loss mitigation agreement.  Any such agreement shall be non-recourse unless included in a reaffirmation agreement.  Secured Creditor further requests that it be allowed to contact the debtors via telephone or written correspondence to offer such an agreement.

DATED this 25th day of July, 2017.

 /s/ Armand J. Howell

Armand J. Howell

Attorney for Secured Creditor

# DEED OF TRUST



10610775
1/30/2009 12:40:00 PM $24.00
Book - 9680 Pg - 3934-3941
Gary W. Ott
Recorder, Salt Lake County, UT
CORNERSTONE TITLE INS AGCY LLC
BY: eCASH, DEPUTY - EF 8 P.

Return To:
NEW LINE MORTGAGE
5241 SOUTH STATE STREET, SUITE
2
MURRAY, UTAH 84107
Attn.: SHIPPING DEPT./DOC.
CONTROL
Prepared By:

KAGIE   DL

610        D2 001 001

[Space Above This Line Fo

Tax Serial Number:
State of Utah

# DEED OF TRUST

FHA Case No.

MIN:

MERS TELEPHONE: (888) 679-6377

THIS DEED OF TRUST ("Security Instrument") is made on January 26, 2009. The Grantor is David L
Kagie a married man ("Borrower"). The trustee is Cornerstone Title ("Trustee"). The beneficiary is Mortgage
Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's
successors and assigns). MERS is organized and existing under the laws of Delaware, and has an address and
telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.  New Line Mortgage, DIV.
Republic Mortgage Home Loans, LLC, ("Lender") is organized and existing under the laws of STATE OF
UTAH, and has an address of 5241 South State Street, Suite 2, Murray, UTAH  84107. Borrower owes Lender
the principal sum of Two Hundred Twenty Five Thousand Five Hundred Thirty Four And 00/100 Dollars (U.S.
$225,534.00).  This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"),
which provides for monthly payments, with the full debt, if not paid earlier, due and payable on February 1, 2039.
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and
all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced
under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's
covenants and agreements under this Security Instrument and the Note.  For this purpose, Borrower irrevocably
grants and conveys to the Trustee, in trust, with power of sale, the following described property located in SALT
LAKE County, Utah:

Lot 223, SILVERWOOD SUBDIVISION PHASE 2, according to the official plat thereof as recorded in
the Office of the Salt Lake County Recorder.

FHA  Utah Deed of Trust with MERS - 4/96
4N(UT) (0305).01        Amended 2/98            Page 1 of 8
utfmertd

Initials: 

which has the address of **3398 South 6180 West** [Street] **West Valley City** [City], Utah  **84128** [Zip Code] ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property. Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

    **1.  Payment of Principal, Interest and Late Charge.**  Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

    **2.  Monthly Payment of Taxes, Insurance and Other Charges.**  Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

    **3.  Application of Payments.**  All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

    <u>First,</u> to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

    <u>Second,</u> to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

    <u>Third,</u> to interest due under the Note;

FHA  Utah Deed of Trust with MERS - 4/96
4N(UT) (0305).01          Amended 2/98          Page 2 of 8          Initials: _____

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4.   **Fire, Flood and Other Hazard Insurance.**  Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance.  This insurance shall be maintained in the amounts and for the periods that Lender requires.  Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary.  All insurance shall be carried with companies approved by Lender.  The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail.  Lender may make proof of loss if not made promptly by Borrower.  Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly.  All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property.  Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments.  Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5.   **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.**  Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control.  Borrower shall notify Lender of any extenuating circumstances.  Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted.  Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default.  Lender may take reasonable action to protect and preserve such vacant or abandoned Property.  Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence.  If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease.  If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6.   **Condemnation.**  The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument.  Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal.  Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments.  Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7.   **Charges to Borrower and Protection of Lender's Rights in the Property.**  Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2.  Borrower shall pay these obligations on time directly to the entity which is owed the payment.  If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to

enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall·satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8.   **Fees.** Lender may collect fees and charges authorized by the Secretary.

9.   **Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i)  Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument
prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i)  All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10.  **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment

in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall

collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If the power of sale is invoked, Trustee shall execute a written notice of the occurrence of an event of default and of the election to cause the Property to be sold and shall record such notice in each county in which any part of the Property is located. Lender or Trustee shall mail copies of such notice in the manner prescribed by applicable law to Borrower and to the other persons prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the time required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the county clerk of the county in which the sale took place.**

**If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.**

**19. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs.

**20. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

**21. Request for Notices.** Borrower requests that copies of the notices of default and sale be sent to Borrower's address which is the Property Address.

**22. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

[ ]  Condominium Rider                    [ ]  Growing Equity Rider            [ ]  Other [specify]
[ ]  Planned Unit Development Rider        [ ]  Graduated Payment Rider

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.
Witnesses:

_____          _____ (Seal)
                                            David L. Kagie                    -Borrower

_____          _____ (Seal)
                                                                              -Borrower

_____          _____ (Seal)
                                                                              -Borrower

_____          _____ (Seal)
                                                                              -Borrower

STATE OF UTAH,        *Salt Lake*      County ss:

     The foregoing instrument was subscribed and sworn to and acknowledged before me this *January 20, 2009* by
David L Kagie,

My Commission Expires: *8/3/2009*

                                     Notary Public
                          Residing at: *South Jordan, UTAH*

```
NOTARY PUBLIC
DANIEL A. BLANCO
11223 S. Autumn Farm Drive
South Jordan, Utah 84095
My Commission Expires
August 3, 2009
STATE OF UTAH
```

Initials: _____

# NOTE

Multistate

# NOTE

MIN ███████████

MERS TELEPHONE: (888) 679-6377

Loan No.: ████████

FHA Case No.
████████████████

January 26, 2009
[Date]

3398 South 6180 West, West Valley City, UTAH 84128
[Property Address]

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means **New Line Mortgage, DIV. Republic Mortgage Home Loans, LLC** and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of **Two Hundred Twenty Five Thousand Five Hundred Thirty Four And 00/100** Dollars (U.S. **$225,534.00**), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of **Five and One Half** percent (5.500%) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

### (A) Time

Borrower shall make a payment of principal and interest to Lender on the **FIRST** day of each month beginning on **March 1, 2009,**. Any principal and interest remaining on the 1st day of **February, 2039**, will be due on that date, which is called the "Maturity Date."

### (B) Place

Payment shall be made at **5241 South State Street, Suite 2, Murray, UTAH 84107** or at such place as Lender may designate in writing by notice to Borrower.

### (C) Amount

Each monthly payment of principal and interest will be in the amount of U.S. **$1,280.56**. This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

### (D) Allonge to this Note for payment adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

[ ] Graduated Payment Allonge        [ ] Growing Equity Allonge        [ ] Other [specify]

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

---

FHA Multistate Fixed Rate Note

Page 1 of 3

10/95
1R (0809)

Initials: _____

usfnote

6.    **BORROWER'S FAILURE TO PAY**
    (A)    Late Charge for Overdue Payments
    If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen (15) calendar days after the payment is due, Lender may collect a late charge in the amount of Four percent (4.00%) of the overdue amount of each payment.
    (B)    Default
    If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.
    (C)    Payment of Costs and Expenses
    If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

7.    **WAIVERS**
    Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

8.    **GIVING OF NOTICES**
    Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.
    Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

9.    **OBLIGATIONS OF PERSONS UNDER THIS NOTE**
    If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

---

FHA Multistate Fixed Rate Note

10/95
LR (0809)

Initials:

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)
David L Kane                                    -Borrower
Social Security No.: ████████

WITHOUT RECOURSE PAY TO THE ORDER OF

NEW LINE MORTGAGE, DIV.
REPUBLIC MORTGAGE HOME LOANS, LLC
BY:
Robert L Jorgensen CPA, Controller

Countrywide Bank, FSB

PAY TO THE ORDER

WITHOUT RECOURSE
BANK OF AMERICA, N.A.

BY _Michele Sjolander_

MICHELE SJOLANDER
MANAGING DIRECTOR

PAY TO THE ORDER OF
BANK OF AMERICA, N.A.

WITHOUT RECOURSE
COUNTRYWIDE BANK, FSB

BY _Laurie Meder_
LAURIE MEDER
SENIOR VICE PRESIDENT

# ASSIGNMENT

LOAN # ███████████

RECORDING REQUESTED BY:
RECONTRUST COMPANY, N.A.

WHEN RECORDED MAIL DOCUMENT
TAX STATEMENT TO:
BAC Home Loans Servicing, LP
2380 Performance Dr, TX2-985-07-03
Richardson, TX 75082

10808699
10/1/2009 12:54:00 PM $10.00
Book - 9767 Pg - 7435
Gary W. Ott
Recorder, Salt Lake County, UT
LSI TITLE CO
BY: eCASH, DEPUTY - EF 1 P.



SPACE ABOVE THIS LINE FOR RECORDER'S

## CORPORATION ASSIGNMENT OF DEED OF TRUST/MORTGAGE

FOR VALUE RECEIVED, THE UNDERSIGNED HEREBY GRANTS, ASSIGNS AND TRANSFER TO:

BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING LP

ALL BENEFICIAL INTEREST UNDER THAT CERTAIN DEED OF TRUST DATED 01/26/2009, EXECUTED BY: DAVID L KAGIE, TRUSTOR: TO CORNERSTONE TITLE, AS TRUSTEE AND RECORDED AS INSTRUMENT NO. 10610775 ON 01/30/2009, IN BOOK 9680, PAGE 3934 OF OFFICIAL RECORDS IN THE COUNTY RECORDERS OFFICE OF SALT LAKE COUNTY, IN THE STATE OF UTAH. THE LAND AFFECTED BY THIS ASSIGNMENT IS LOCATED IN SALT LAKE COUNTY, THE STATE OF UTAH AND IS DESCRIBED AS FOLLOWS:

LOT 223, SILVERWOOD SUBDIVISION PHASE 2, ACCORDING TO THE OFFICIAL PLAT THEREOF AS RECORDED IN THE OFFICE OF THE SALT LAKE COUNTY RECORDER.

TOGETHER WITH THE NOTE OR NOTES THEREIN DESCRIBED OR REFERRED TO, THE MONEY DUE AND TO BECOME DUE THEREON WITH INTEREST, AND ALL RIGHTS ACCRUED OR TO ACCRUE UNDER SAID DEED OF TRUST/MORTGAGE.

Dated: SEP 3 0 2009

By: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

Julie C. Webb     Assistant Secretary

STATE OF Texas
COUNTY OF Dallas

On SEP 3 0 2009, before me Shameca L. Harrison , personally appeared Julie C. Webb Assistant Secretary known to me (or proved to me on the oath of _____ or through _____) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

WITNESS MY HAND AND OFFICIAL SEAL

Notary Public's Signature

SHAMECA L HARRISON
My Commission Expires
August 13, 2012

ASSISTANT SECRETARY CERTIFICATE

OF

BANK OF AMERICA, NATIONAL ASSOCIATION

The undersigned, Devra Lindgren, an Assistant Secretary of Bank of America, National Association (the "Association"), a national banking association organized and existing under the laws of the United States of America and having its principal place of business in the City of Charlotte, County of Mecklenburg, State of North Carolina, does hereby certify that:

1.   **Countrywide Document Custody Services** was a division of **Treasury Bank, National Association.**

    Effective September 6, 2005, **Treasury Bank, National Association** changed its name to **Countrywide Bank, National Association.**

    Effective March 12, 2007, **Countrywide Bank, National Association** converted to a federal savings bank under the title of **Countrywide Bank, FSB.**

    Effective April 27, 2009, **Countrywide Bank, FSB** converted back to a national banking association under the title of **Countrywide Bank, National Association,** and immediately thereafter, merged with and into **Bank of America, National Association.**

2.   Effective April 27, 2009, **Countrywide Home Loans Servicing LP** changed its name to **BAC Home Loans Servicing, LP.**

    Effective July 1, 2011, **BAC Home Loans Servicing, LP** merged with and into **Bank of America, National Association.**

    IN WITNESS WHEREOF, I have hereupon set my hand and affixed the seal of said Association this 23rd day of May, 2012.

[SEAL]

Devra Lindgren
Assistant Secretary

# LOAN MODIFICATION

11854687
05/23/2014 03:11 PM $36.00
Book - 10233 Pg - 1032-1045
GARY W. OTT
RECORDER, SALT LAKE COUNTY, UTAH
MONUMENT TITLE INS. CO.
BY: EEP, DEPUTY - WI 14 P.

**WHEN RECORDED MAIL TO:**
ATTN – HOME RETENTION RECORDING
Bank of America, N.A.
11802 Ridge Parkway, Suite 100
Broomfield, CO   80021
Prepared By: *Debra Alps* *Debra Alps*

*origin mtg $225,534.00*
*new mtg   $ 213,227.79*
*new money  $ 0*

Bank of America, N.A.
*11802 Ridge Parkway Suite 100 Broomfield CO 80021*
Document No.: ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮  Space Above for Recorder's Use ▮▮▮▮▮▮▮▮
*Prev Rec Info: 1/30/2009  BK 9680  BP 3934 -3941  INST#*
*10610775*
**LOAN MODIFICATION AGREEMENT**
*APN:* ▮▮▮▮▮▮▮▮

**Borrower ("I")**[1]: DAVID L KAGIE  ▮▮▮▮▮▮▮▮

**Lender or Servicer ("Lender")**: Bank of America, N.A.

**Date of first-lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note")**: January 26, 2009

**FHA Loan Number:** ▮▮▮▮▮▮▮▮

**Property Address ("Property")**: 3398 SOUTH 6180 WEST, WEST VALLEY CITY, UT 84128

See attached Exhibit "A" for Legal Description

**Recording information:** Mortgage recorded in Book/Liber _____ at page(s) _____ of the _____ Records of _____

_____        _____
(Name of Records)                        (County and State, or Other Jurisdiction)

[1] If more than one Borrower or Mortgagor executes this document, each is referred to as "I." Words signifying the singular (such as "I") include the plural (such as "we") and vice versa where appropriate.

**FHA-HAMP Loan Modification Agreement**    One- to Four-Family **Bank of America, N.A.** (rev. 111219/11)

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Page 1

**Important Disclosures:** The Federal Housing Administration (FHA) requires that the Lender provide you with information to help you understand the modified mortgage and partial claim terms that are being offered to you. The Lender must timely provide you with clear and understandable written information about the terms, costs, and risks of the modified mortgage to enable the Borrower to make informed decisions. This information is included below. Please read it carefully.

If my representations in Section 1 are true in all material respects and if I have satisfied all of the preconditions in Section 2, this Loan Modification Agreement ("Agreement") will, as set forth in Section 3, modify (1) the Mortgage on the Property and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are called the "Loan Documents." Capitalized terms used in this Agreement and not otherwise defined have the meanings set forth in the Mortgage and/or Note, as applicable.

1.  **My Representations.** I certify, represent to Lender, and agree:

    A.  I am experiencing a financial hardship. As a result, (1) I am in default under the Loan Documents and (2) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments due under the Loan Documents.

    B.  I live in the Property as my principal residence. The Property has not been condemned.

    C.  Except as approved in writing by the FHA or Lender, there has been no change in the ownership of the Property since I signed the Loan Documents.

    D.  I have provided documentation for **all** income that I receive. I am not required to disclose child support or alimony, unless I chose to rely on such income to qualify for the FHA-Home Affordable Modification Program ("Program").

    E.  Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including (but not limited to) the documents and information regarding my eligibility for the Program, are true and correct.

    F.  I have made all payments required under a trial period plan, as required under the Program.

2.  **Acknowledgements and Preconditions to Modification.** I understand, acknowledge, and agree:

    A.  As a precondition to receiving this proposed modification of the Loan Documents, I must accept and fully execute the FHA's required subordinate mortgage (also called a Partial Claim Note and Security Instrument).

B.  Prior to the Modification Effective Date (as defined in Section 3), if Lender determines that any of my representations in Section 1 are no longer true and correct, (1) the Loan Documents will not be modified, (2) this Agreement will not be valid, and (3) the Lender will have all of the rights and remedies provided by the Loan Documents.

C.  The Loan Documents will not be modified unless the Modification Effective Date (as defined in Section 3) has occurred.

D.  The Lender has no obligation to make any modification of the Loan Documents if any of the requirements under this Agreement has not been met.

3.  **The Modification.** If my representations in Section 1 continue to be true and correct and all preconditions to the modification in Section 2 have been met, the Loan Documents will automatically become modified (the "Modified Loan Documents") on November 1, 2013 (the "Modification Effective Date") and Lender will waive all due and unpaid late charges.

A.  The new Maturity Date will be: October 1, 2043

B.  The new principal balance of my Note will be $213,227.79 (the "New Principal Balance").

C.  I promise to pay the New Principal Balance, plus interest, to the order of Lender.

D.  The annual interest rate on the New Principal Balance will be 4.250%, beginning October 1, 2013, both before and after any new default. This fixed interest rate will remain in effect until principal and interest and all of the obligations due under the Modified Loan Documents are paid in full.

E.  On November 1, 2013 and on the first day of each month thereafter until all of the obligations due under the Modified Loan Documents are paid in full, Borrower must make monthly payments of $1,377.67 (each, a "Monthly Payment"). Each Monthly Payment includes principal and interest of $1,048.95, plus the current required escrow payment of $328.72. My required escrow payments will likely adjust periodically in accordance with applicable law. If an escrow adjustment occurs, my total monthly payment would change accordingly.

F.  I will be in default if I do not comply with the terms of the Modified Loan Documents.

4.  **Additional Agreements.** I understand and agree:

A.  I accept the risks of entering into this Agreement. These risks include (but are not limited to):

(1) The FHA's subordinate lien will require a balloon payment when I pay off, sell, or refinance the Property, which may make these things more difficult to do. The FHA's subordinate lien may also make it more difficult to get additional subordinate lien financing.

(2) My modified loan will have a fixed interest rate that will not change. As a result, if the interest rate in my Loan Documents could go up and down based on changes in an index, my new fixed interest rate might sometimes be higher than I would have paid before this modification.

B.  All persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (1) a borrower or co-borrower is deceased; (2) the borrower and co-borrower are divorced and the Property has been transferred to one spouse in the divorce decree, in which event the spouse who no longer has an interest in the Property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (3) the Lender has waived this requirement in writing.

C.  This Agreement supersedes the terms of any modification, forbearance, trial period plan, or workout plan that I entered into with Lender before the date of this Agreement.

D.  Except to the extent modified by this Agreement, I will comply, with all covenants, agreements, and requirements of the Loan Documents, including (but not limited to) my agreement to pay all taxes, insurance premiums, assessments, Escrow Items, impounds, and all other similar obligations, the amounts of which may change in accordance with the terms of my Modified Loan Documents.

E.  The Modified Loan Documents are duly valid, binding agreements, enforceable in accordance with their terms and are hereby ratified and confirmed.

F.  All terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect. Nothing in this Agreement satisfies or releases any obligation in the Loan Documents. Except as expressly modified by this Agreement, I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents and this Agreement.

G.  I will fully cooperate with Lender in obtaining any title endorsement(s) or similar title insurance product(s) and/or any subordination agreement(s) that are necessary or required by Lender's procedures and/or the Program to ensure that the Mortgage, as modified by this Agreement, is in first-priority lien position and is fully enforceable. The terms of this Agreement will not become effective, and this Agreement will be null and void, if Lender does not receive such title endorsement(s), title insurance product(s), and/or subordination agreement(s) on or before the Modification Effective Date.

H.  If an error is detected after execution of this Agreement, I will execute any documents reasonably necessary to (1) consummate the terms and conditions of this Agreement and/or (2) correct the terms and conditions of this Agreement (a "Corrected Agreement"). If I receive a Corrected Agreement from Lender, this Agreement will be void and of no legal effect. If I elect not to sign a Corrected Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Program.

I.  Lender will collect and record, as applicable, personal information about me, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity ("Personal Information"). In addition, I consent to the disclosure of my Personal Information and the terms of the trial period plan and this Agreement by Lender to (1) any investor, insurer, guarantor, or servicer that owns, insures, guarantees, or services my first lien or subordinate lien (if applicable) mortgage loan(s), (2) companies that perform support services for the Program, and (3) any HUD-certified housing counselor.

J.  If any document related to the Loan Documents and/or this Agreement is lost, misplaced, or otherwise missing, I will comply with Lender's request to execute, acknowledge, initial, and deliver to Lender any documents Lender deems necessary ("Replacement Documents"). I will deliver the Replacement Documents within ten days after I receive Lender's written request for such Replacement Documents.

In Witness Whereof, the Lender and I have executed this Agreement.
(Signatures must be signed exactly as printed, original signature required, no
photocopies accepted)

DAVID L KAGIE
(Must Be Signed Exactly As Printed)

9-25-13
Date

[Space below this line for Acknowledgement]

STATE OF _Utah_

COUNTY OF _Salt lake_

On the 25th day of _September_ in the year 2013 before me, _L Darlene Melfi_
Notary Public, personally appeared DAVID L KAGIE, personally known to me or proved
to me on the basis of satisfactory evidence to be the person(s) whose name(s) is (are)
subscribed to the within instrument and acknowledged to me that he/she/they executed
the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s)
on the instrument, the person(s), or entity upon behalf of which the person(s) acted,
executed the instrument.

WITNESS my hand and official seal.

_____ Notary Signature

_L. Darlene Melfi_ Notary Public Printed Name Please Seal Here

_April 26, 2015_ Notary Public Commission Expiration Date



L. DARLENE MELFI
Notary Public State of Utah
My Commission Expires on:
April 26, 2015
Comm. Number: 608713

Page 6

**DO NOT WRITE BELOW THIS LINE.**
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
THIS SECTION IS FOR INTERNAL USE ONLY

Bank of America, N.A., for itself or as successor by merger to BAC Home Loans Servicing, LP
By: Urban Settlement Services, LLC, its attorney in fact

By: _____        Dated: **SEP 2 6** 2013

Name: PATRICK VIGIL
Title: ASSISTANT SECRETARY

_____[Space below this line for Acknowledgement]_____

STATE OF COLORADO
COUNTY OF BROOMFIELD
**SEP 2 6 2013**
On _____ before Me BRIANNA MARIE ROSENBERG Notary Public, personally appeared
PATRICK VIGIL _____ personally known to me (or proved to me on
the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or entity upon
behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

_____Notary Signature

BRIANNA MARIE ROSENBERG ____ Notary Public Printed Name Please Seal Here

FEBRUARY 13, 2017 ____ Notary Public Commission Expiration Date

BRIANNA MARIE ROSENBERG
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20134000610
COMMISSION EXPIRES FEB. 13, 2017

**Exhibit A**

**Legal description**

LOT 223, SILVERWOOD SUBDIVISION PHASE 2, ACCORDING TO THE OFFICIAL PLAT THEREOF AS RECORDED IN THE SALT LAKE COUNTY RECORDER.